## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

ROBERT MIDDIEN, on behalf of himself
and all other similarly situated,

            Plaintiff,

    v.

VOLVO CARS OF NORTH AMERICA,
LLC; and VOLVO CAR USA, LLC,

            Defendants.

Civil Action No. _____

## **COMPLAINT**

Plaintiff Robert Middien alleges for his complaint the following.

## **Preliminary Statement**

1.    This is a class action brought by the plaintiff, Robert Middien ("Middien" or the "Plaintiff"), on behalf of himself and all other purchasers and lessees of the 2014 and 2016 Volvo XC90 and certain similarly situated purchasers and lessees of the 2017 Volvo XC90 (collectively, the "Non-Compatible Volvo XC90s"), as detailed herein. This case concerns Volvo's ubiquitous misrepresentations in its marketing of the Non-Compatible Volvo XC90s that

1

those cars featured compatibility with Android Auto, when in fact, the cars were not compatible with Android Auto.

2.     In September 2014, Volvo first introduced for sale in the United States its new generation of Volvo XC90 luxury crossover SUVs. The XC90 was a completely redesigned model and Volvo's first flagship offering since Chinese automobile company Zhejiang Geely Holding Group Co. Ltd had acquired Defendants' parent companies.

3.     The Volvo XC90s sold in September 2014 were the 2014 XC90s. In 2015, Volvo began selling the 2016 XC90. Volvo did not sell a 2015 XC90. In developing and marketing the Volvo XC90, Volvo made substantial efforts to distinguish the Volvo XC90 from its competitors' automobiles by marketing it as more technologically advanced and unique than the competition.

4.     In its public relations and marketing campaign for the Volvo XC90, Volvo touted an in-car technology user interface, which it called "Sensus." Volvo stated in its press releases and marketing materials that a significant, cutting edge feature of Sensus was that it was or would be compatible with the coveted Google application, Android Auto. That compatibility would enable the driver of the Volvo XC90 to integrate features in his or her Android smartphone with the Sensus system in the Volvo XC90.

5.　　Volvo's representations that the Sensus system in the Volvo XC90 was or would be compatible with Android Auto were false and misleading. Volvo has now admitted that the Sensus system in the Non-Compatible Volvo XC90s was not compatible with Android Auto, and the Sensus system in the Non-Compatible Volvo XC90s is not and never will be compatible with Android Auto.

6.　　By making ubiquitous misrepresentations that the Sensus system in the non-compatible Volvo XC90s was or would be compatible with Android Auto, Volvo (i) engaged in deceptive acts in violation of New Jersey's Consumer Fraud Act (the "NJCFA"), N.J. Stat. § 56:8-2, *et seq.*; (ii) engaged in deceptive acts in violation of the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, §§ 2, 9 ("Chapter 93A"); (iii) breached express warranties by description in violation of N.J. Stat. § 12A:2-313(b) (which is also known as UCC § 2-313(b)); and (iv) breached express warranties by description in violation of Mass. Gen. Laws ch. 106 § 2-313(b) (the Massachusetts enactment of UCC § 2-313(b)). Volvo is liable to Plaintiff and all other similarly situated members of the Nationwide Class defined below for all damages resulting from its violations of the NJCFA, Chapter 93A, and UCC § 2-313(b).

## Parties

7.　　Plaintiff Robert Middien is a resident of Chestnut Hill, Massachusetts.

8.     Defendant Volvo Car USA, LLC ("Volvo USA") is a limited liability company organized under Delaware law with its principal place of business in Rockleigh, New Jersey. Volvo USA is a wholly owned subsidiary of defendant Volvo Cars of North America LLC. Volvo USA is indirectly wholly owned by Volvo Car Corporation.

9.     Defendant Volvo Cars of North America, LLC ("Volvo North America") is a limited liability company organized under Delaware law with its principal place of business in Rockleigh, New Jersey. Defendant Volvo North America wholly owns defendant Volvo USA. Defendant Volvo North America is wholly owned by Volvo Car Corporation.

10.     The Defendants Volvo USA and Volvo North America are affiliates of each other, are jointly and severally liable for the conduct alleged herein, and collectively are referred to in this complaint as "Volvo" or the "Defendants."

## Jurisdiction

11.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1332(d) and 1453, because (1) this action is a "class action," which contains class allegations and expressly seeks certification of a proposed class of individuals; (2) the putative Nationwide Class consists of more than one hundred proposed class members; (3) the citizenship of at least one class member (Plaintiff, a citizen of Massachusetts)

is different from Defendants' citizenship (Delaware and New Jersey)[1]; and (4) the aggregate amount in controversy by the claims of Plaintiffs and the putative Nationwide Class exceeds $5,000,000, exclusive of interest and costs.

12.     This Court also has personal jurisdiction over Defendants because Defendants are headquartered and therefore "at home" in New Jersey, and moreover, the actions of the Defendants that give rise to the claims against them in this action took place and emanated from New Jersey.

13.     Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction in this District, and the actions of the Defendants' that give rise to the claims against them in this action took place and emanated this District.

---

[1] Because jurisdiction is based on the Class Action Fairness Act, 28 U.S.C. § 1332(d), even though Defendants are limited liability companies, each Defendant is a citizen of the states "where it has its principal place of business and…under whose laws it is organized." 28 U.S.C. § 1332(d). That is, the rules applicable in traditional non-class diversity cases, under which the citizenship of limited liability companies would be determined by the citizenship of those companies' members, do **not** apply to this case. *Erie Ins. Exch. V. Erie Indemn. Co.*, 722 F.3d 154, 161 n.7 (3d Cir. 2013) (explaining that the Class Action Fairness Act "evinces an intent that suits by unincorporated associations be treated like suits by corporations in that the citizenship of the association for diversity purposes is determined by the entity's principal place of business and not by the citizenship of its members").

**Factual Allegations**

14.    In or about May 2016, the Plaintiff purchased a 2016 Volvo XC90 from 128 Volvo, an authorized Volvo dealership in Wakefield, Massachusetts. The Plaintiff's Volvo XC90 is one of the Non-Compatible Volvo XC90s described herein.

15.    Android Auto is a smartphone application for Google Android cell phones, designed to work seamlessly with the display screen of the Google Android user's car. Users can control their smartphone through the car's touchscreen display, steering wheel buttons, and/or voice commands. Certain applications and functions of the smartphone are displayed on the console, including telephone calls, text messaging, music/podcast players, and driving direction apps like Google Maps or Waze.

The Two Volvo Defendants

16.    Defendant Volvo USA is the current exclusive distributor of Volvo automobiles in the United States. It imports into and markets Volvo automobiles in the United States, and it sells Volvo automobiles to authorized Volvo dealers, who in turn sell and lease Volvo automobiles to purchasers and lessees. Volvo USA has been the exclusive distributor of Volvo automobiles in the United States since it assumed those functions from Volvo North America.

17. Since it became the exclusive distributor of Volvo automobiles in the United States, performing these functions, Volvo USA has created and disseminated the misrepresentations described in this complaint. Volvo USA has provided marketing, sales, parts, service, technology, and training support to Volvo automotive retailers in the United States.

18. Prior to Volvo USA becoming the exclusive distributor of Volvo automobiles in the United States, Volvo North America served the same function that Volvo USA currently serves. That is, Volvo North America (i) was the exclusive distributor of Volvo automobiles in the United States; (ii) imported into and marketed Volvo automobiles in the United States, and sold Volvo automobiles to authorized Volvo dealers, who in turn sold and leased Volvo automobiles to purchasers and lessees; (iii) provided marketing, sales, parts, service, technology, and training support to Volvo automotive retailers in the United States; and (iv) performing these functions, Volvo North America has created and disseminated the misrepresentations described in this complaint

19. To be clear, the two defendants in this case—Volvo USA and Volvo North America—served the same functions, but during different time periods. When Volvo USA was formed and became the exclusive distributor of Volvo automobiles in the United States, this was simply a change in corporate structure between two corporations, one wholly owned by the other and both directly or

indirectly wholly owned by the same parent corporation. That is, it was a change in form, rather than substance.

20.    The precise date when Volvo USA became the exclusive distributor of Volvo automobiles in the United States is not currently known by Plaintiff. Volvo did not publicize this change in corporate structure, and Volvo does not generally distinguish among the various Volvo-affiliated entities in its press releases or its other publicly available corporate documents. Of course, this fact will be easily learned in discovery in this action.

21.    Despite Volvo's change in corporate structure, both Volvo defendants are jointly and severally liable for all wrongs alleged in this complaint for the reasons detailed below.

22.    First, upon information and belief, when Volvo USA commenced operations and superseded Volvo North America, it acquired all assets **and all liabilities** of its predecessor, Volvo North America, including all liabilities arising from Volvo North America's deception alleged in this complaint. Therefore, Volvo USA is liable for the deceptive conduct of both Volvo North America and its own deceptive conduct.

23.    Second, although Volvo North America appears to have ceased being the exclusive distributor of Volvo automobiles at or shortly after the formation of Volvo USA, Volvo North America is nonetheless liable for misrepresentations it

disseminated to the public and upon which consumers continued to rely after Volvo USA became the exclusive distributor of Volvo vehicles in the United States. That is, Volvo North America is liable for the harm caused by its misrepresentations after those misrepresentations were made. Therefore, Volvo North America is also liable for damages caused by its deceptive conduct while it was the exclusive distributor of Volvo automobiles in the United States and thereafter.

24.    Volvo USA and Volvo North America are joint tortfeasors. They are jointly and severally liable with each other for the conduct alleged in this complaint.

25.    Finally, the deception alleged herein reflects a single, fraudulent scheme, rather than separate independent acts of deception by the two Volvo defendants. Because Volvo USA and Volvo North America jointly perpetrated the fraudulent scheme alleged herein, they are jointly and severally liable for all harm caused by that scheme.

26.    Because the precise date on which Volvo USA superseded Volvo North America is not known, but both entities performed the same function just at different times, Plaintiff refers in this complaint to both entities simply as "Volvo." Discovery will clarify the precise date when Volvo North America ceased being the exclusive distributor of Volvo automobiles in the United States and Volvo

USA became the exclusive distributor of Volvo automobiles in the United States, should that fact be relevant.

Volvo's Deceptive Conduct Occurred in New Jersey

27.    Volvo developed the press releases, marketing materials, and planned and made other statements relevant to Plaintiff's claims in New Jersey. Volvo made the representations detailed below and disseminated them from its headquarters in New Jersey. All of the deceptive conduct alleged in this complaint emanated from New Jersey.

28.    Volvo's marketing staff for its North American operations is based in New Jersey. Volvo's Executive Vice President of Marketing in North America from 2014 through February 2017, Bodil Eriksson, moved to New Jersey from Sweden and led the development of Volvo's marketing strategies, including for the Volvo XC90, from New Jersey.

29.    Volvo's Director of Marketing Innovation and Strategy, John Militello; Marketing Communications Manager Kevin Corcoran; Director of Marketing Operations, Jay Hammill; Technology and Product Communications Manager, Jim Nichols; and Head of Marketing, Communications and Product Strategy for the Americas, Bob Jacobs, all work for Volvo in New Jersey.

30.    The LinkedIn profiles of key Volvo marketing executives also confirm that Volvo's United States marketing emanates from New Jersey. For

example, Volvo's Director of Marketing, John Militello, explains in his LinkedIn Profile that he "oversees all US marketing efforts" from Rockleigh, New Jersey. Mr. Militello specifically emphasizes his marketing efforts for the XC90 from Volvo's Rockleigh, New Jersey offices.

31. Similarly, Volvo's Head of Marketing, Communications, and Product Strategy for the Americas, Bob Jacobs, states in his LinkedIn profile that he is "[r]esponsible for all Marketing, Communications and Product Strategy for Volvo Cars US" and carries out those responsibilities from Rockleigh, New Jersey.

32. Volvo's Product Communications Manager, Jim Nichols, likewise states in his LinkedIn profile that he works for Volvo in New Jersey and is responsible for "manag[ing] product and technology communications for Volvo Cars in the United States," including "[o]rganiz[ing] and plan[ning] media launches and press drives" and setting "communications strategies for product and technology launches." As detailed herein, those are the types of communications, regarding the Volvo XC90 upon which this complaint is based.

33. Similarly, Volvo's Manager, Marketing Platforms & Technologies, Linda Gangeri confirms that Volvo works to "[d]Deliver an integrated marketing strategy across all consumer touchpoints" from its offices in Rockleigh, New Jersey.

<u>Volvo's Press Releases Regarding the Volvo XC90 and Android Auto</u>

34.    In its promotions for the XC90, Volvo specifically focused on the Sensus system, emphasizing its compatibility with Android Auto. As demonstrated below by Volvo's press releases and other statements, Volvo would sometimes falsely represent that Sensus on the Volvo XC90 was compatible with Android Auto, whereas sometimes it would instead represent that Sensus would become compatible with Android Auto in the future. In any event, all of those representations were untrue because, as Volvo now admits, the Sensus never was, and never will be, compatible with Android Auto in the Non-Compatible Volvo XC90s. A sample of Volvo's press releases and public statements regarding the compatibility of the Sensus system in the Volvo XC90 with Android Auto is set forth below.

35.    In a June 25, 2014 press release, Volvo announced that Android Auto would be available in its next generation of vehicles, specifically including the Volvo XC90. Volvo's press release read in full as follows:

**Volvo Cars adds Android Auto to its next generation of cars**

**June 25, 2014 | ID: 147835**

**Volvo Car Group joins the Open Automotive Alliance**

Volvo Car Group (Volvo Cars) has joined the Open Automotive Alliance to make the Android smartphone platform available to drivers through its new ground-breaking user interface. This move brings together one of the world's most progressive car companies

and the world's most popular smartphone platform, developed by Google.

The integration of Android Auto™ promises to add yet another dimension to the Volvo in-car experience. Android Auto brings features and services familiar to Android smartphone and tablet users directly into the car via Volvo Cars' large center console touch screen display.

"Google's approach to user-centricity and the application of technology to improve peoples' everyday lives makes Android Auto a perfect addition to the Volvo experience," said Håkan Samuelsson, President and CEO of Volvo Cars.

The interaction between Android Auto and Volvo Cars' brand new user interface transforms the look and feel of a car's interior. Volvo Cars' interiors will be characterized by their high-tech simplicity and functionality.

**"We have worked hard to ensure an enjoyable user experience with Android Auto.** This will offer our customers a new degree of fluidity and accessibility in the usage of their mobile devices, and bring the digital ecosystem our customers already enjoy into the car, complementing Volvo Cars' existing connected car services and applications," said Samuelsson.

**Android Auto will provide access to Google Search, Google Maps, Google Play Music and specially adapted third party applications, such as Spotify.** All phone-based applications can be controlled via voice or steering wheel controls or the car's touch screen ensuring the entire interaction with Android Auto content is both safe and easy.

Volvo Cars' portrait touch screen provides users with the benefit of having both Volvo Cars and Android Auto content on the screen simultaneously, removing the need to switch between car and Android phone screens.

"Android smartphone users will feel completely at home in a new Volvo. We have created a wholly-integrated user experience in our large portrait-oriented touch screen that takes the in-car mobile device experience to a new level. That, coupled with the obvious driver safety benefits of an advanced voice control system offered by

13

Google, made Android Auto a perfect match for Volvo," said Samuelsson.

**Android Auto will be available on all new Volvo cars** based on the new Scalable Product Architecture (SPA), **starting with the all-new XC90,** due to be publically revealed at this year's Paris Motor Show.

(Emphasis added).

36.    In an October 21, 2014 press release, Volvo, when introducing the new generation Volvo XC90, touted the Sensus system and its "ability to mirror and use Apple and Android devices on Sensus' touchscreen display." In that press release, Volvo said:

**The all-new Volvo XC90**

**Oct 21, 2014 | ID: 153587**

The all-new Volvo XC90 is a visually striking, premium quality seven seat SUV with world leading safety features, new powertrain technologies, an unrivalled combination of power and fuel efficiency and a superlative interior finish.

The new XC90 marks the beginning of a new chapter in Volvo's history, capturing its future design direction, incorporating its own range of new technologies and utilising its new Scalable Product Architecture (SPA) technology.

**SENSUS**

**Most modern control system on the market**

The new Sensus user interface is without doubt the most modern in-car control system on the market. It completely reinvents the way drivers operate their cars.

The traditional selection of buttons and controls has been replaced with a smooth, intuitive interaction between a large tablet-like touch

screen, controls on the steering wheel and a capable voice-control system.

The digital instrumentation and the head-up display in front of the driver make sure that the most relevant information is available when needed.

**Sensus gives comfortable access to a wide selection of cloud-based applications. The outstanding in-car possibilities includes** Internet radio, connected navigation, finding and paying for parking, seamless music streaming, **the ability to mirror and use** Apple and **Android devices in the touch screen display**, a hot spot for using a tablet in the car – and much more.

(Emphasis added).

37.    On September 17, 2015, Volvo issued a press release that expressly represented that the Sensus system on the Volvo XC90 was compatible with Android Auto. That press release read in part as follows:

**Volvo Car USA Press Release**

**What's New: 2016 Volvo XC90**

**Sep 17, 2015 | ID: 163170**

XC90 T6 AWD Momentum

**All new models for 2016 include the following features:**

- ….
- Sensus High Performance Audio System with 330-watt amplifier and 10 speakers
- Sensus Navigation System with voice control and lifetime map upgrades
- ….
- **Compatibility with Android Auto**

XC90 T6 AWD Inscription

- …
- Sensus High Performance Audio System with 330watt amplifier and 10 speakers
- Sensus Navigation System with Voice Control and Lifetime Upgrades
- …
- **Compatibility with Android Auto**

XC90 T6 AWD R-Design

- …
- Sensus High Performance Audio System with 330watt amplifier and 10 speakers
- Sensus Navigation System with Voice Control and Lifetime Upgrades
- ….
- **Compatibility with Android Auto**

(Emphasis added).

38.    On the very same day, Volvo issued another press release in which it both continued to represent that the 2016 Volvo XC90 was compatible with Android Auto and, contradicting that representation, said that Sensus in the 2016 Volvo XC90s was not yet compatible with Android Auto but represented that Volvo would make it compatible in the future. Volvo, however, nonetheless touted the features of the Android Auto application. The press release is presented below:

**Model Overview: 2016 Volvo XC90**

**Sept 17, 2015 | ID: 163169**

Advanced Sensus Connect Technology

The XC90's new Sensus user interface is the most modern in-car control system on the market today. Volvo's interior design goal was to create a safer environment by adding a more intuitive interface that was both simple to operate and aesthetically elegant.

**Sensus provides comfortable access to a wide selection of cloud-based applications. The in-car possibilities include** Internet radio, connected navigation, finding and paying for parking, seamless music streaming, **the ability to mirror** and use Apple and **Android devices in the touchscreen display,** a hotspot for using a tablet in the car and much more.

Information on the center touchscreen is organized in a stack of four "tiles," each displaying a key functionality:

- Navigation

- Media

- Phone

- User-defined Title (such as Apple CarPlay™)

Apple and Volvo Cars are joining forces to make Apple's widely used operating system available to XC90 drivers. Apple CarPlay™ makes it possible to seamlessly integrate an iPhone (version 5 or later) and access selected functionalities and apps via the large center touchscreen. The iPhone can be controlled via the touchscreen or by Siri voice commands via the XC90's audio system.

The all-new XC90 will be the first Volvo to offer this functionality and CarPlay can be retrofitted to any 2016 XC90 that was produced prior to availability.

**A similar interface for Android phones under development and will be introduced at a later date. The integration of Android Auto™ promises to add yet another dimension to the XC90's in-car experience. Android Auto will bring features and services familiar to Android smartphone and tablet users directly into the car.**

> **Android Auto will provide access to Google Search, Google Maps, Google Play Music and specially adapted third-party applications such as Spotify. All phone-based applications can be controlled via voice or steering wheel controls or the car's touchscreen ensuring the entire interaction with Android Auto content is both safe and easy.**

(Emphasis added).

39.    Volvo continued to tout the forthcoming Android Auto compatibility in its 2016 XC90s in a press release announcing that the 2016 XC90 had won several awards at the 2016 Chicago Auto Show:

> **Volvo Car USA Press Release**
>
> **New Volvo S90 Luxury Sedan Makes Chicago Debut, XC90 SUV Presented With Three Awards at 2016 Chicago Auto Show**
>
> **Feb 11, 2016 | ID: 173852**
>
> … The seven-passenger XC90 was given a *MotorWeek* Driver's Choice award, named Best Family Car by the Midwest Automotive Press Association (MAMA), and was selected as a *Consumer Guide* Automotive Best Buy (Premium Midsize Crossover/SUV) at separate media events here….
>
> The XC90 is equipped with Intellisafe, a suite of standard safety features and technologies that make it an IIHS Top Pick+. Sensus, Volvo's unique infotainment system, is controlled through a 9.3-inch tablet-like touch screen that allows drivers an incredible amount of personalization. **Apple CarPlay is available now and Android Auto is coming soon.**

(Emphasis added).

40.    On March 1, 2016, Volvo continued to misrepresent the Sensus system's compatibility with Android Auto. It said in a press release:

**Volvo Car USA Press Release**

**Volvo XC90 – model year 2017**

**Mar 1, 2016 | ID: 190756**

The XC90 is a premium seven seat SUV designed to deliver a luxurious user experience, whilst retaining the ride height, space and practicality that typifies this segment....

**Connectivity**

All new Volvos are now connected, thanks to Volvo's connectivity offering called Sensus. It delivers an intuitive touch screen interface that combines car functions, navigation, connected services and in car entertainment applications such as Spotify, Pandora, or TuneIn. The portrait oriented touch screen enables easy and fast access to a host of functions and features. **See our Sensus factsheet for more details.**

(Emphasis added).

41.    The referenced "Sensus factsheet," made available on Volvo's website, read and contained the photograph and caption thereto, as follows:

***SENSUS***

A technology factsheet on Volvo Cars' user interface technology across the range

**Smartphone integration**

Volvo Cars' Sensus user interface can now be equipped with smartphone integration, which allows you to access specific phone features directly via the touch screen.



*Image shows Android Auto in car screen*

**Sensus works seamlessly with** both Apple CarPlay and **Android Auto**.

Unlike other automakers, Volvo Cars has a fully native integration, ensuring a better overall experience and removing the need to switch from your phone's screen to the car screen.

**As you can see from the images above with the examples of** CarPlay and **Android Auto integration**, your car's other 'tiles' are available at all times.

…distinct, easy-to-use and enjoyable user experience.

(Emphasis added).

<u>Automotive Reviews of the Volvo XC90 and Android Auto</u>

42.    Volvo designed and intended that its press releases and other public relations and marketing efforts would spread among automobile reviewers, Volvo dealers, and others the "fact" that the Sensus system on the Volvo XC90 was or would be compatible with Android Auto. Volvo designed and intended for the automobile reviewers, Volvo dealers, and others to then repeat and pass on to

prospective purchasers or lessees of the Volvo XC90 the "fact" that the Sensus system on the Volvo XC90 was or would be compatible with Android Auto.

43.    Car reviews in the media are typically based on information carefully controlled by manufacturers. During press tours, manufacturers' press teams make presentations to reviewers detailing the various features and functions of the vehicle for the reviewers to use in their reviews. Manufacturers often pay reviewers for permission to use excerpts from positive reviews, which are based on manufacturer-provided information and demonstrations. Manufacturers are thus able to control most of the information disseminated to the public through third party car reviews about the current or promised features of their vehicles.

44.    Volvo succeeded in its effort to have automobile reviewers, Volvo dealers, and others repeat and pass on to prospective and actual purchasers or lessees the Volvo XC90 the "fact" that the Sensus system on the Volvo XC90 was or would be compatible with Android Auto. The automotive press was replete with reviews of the Volvo XC90 which, in describing the Volvo XC90, stated that the Sensus system on the Volvo XC90 was or would be compatible with Android Auto. Some examples of those reviews are as follows.

45.    On August 16, 2014, *Motor Trend* published an article entitled "2016 Volvo XC90 First Look." This article says that the 2016 Volvo XC90's Sensus **"works with** both Apple CarPlay and **Google Android Auto.**"[2]

46.    On February 23, 2015, *Kelly Blue Book* published an article entitled "2016 Volvo XC90 First Review: Promise delivered." This article describes that the 2016 Volvo XC90's Sensus console has **"connectivity capabilities including…Android Auto."**

47.    On June 22, 2015, *GQ* published an article entitled "This is the SUV it's OK to love." This article says that the 2016 Volvo XC90's Sensus will **"handle…Android Auto."**

48.    On Friday, October 16, 2015, *New York Daily News* published an article entitled "Review: 2016 Volvo XC90." This review stated that for the 2016 Volvo XC90 **"Android Auto is standard…."**

49.    On November 25, 2015, *Jalopnik* published an article entitled "Volvo XC90: The Ultimate Buyer's Guide." This article listed among **"Notable Features:… Android Auto compatibility."**

50.    On December 15, 2015, *JD Power* published an article entitled "Apple CarPlay vs. Android Auto." Under "a list of new car, truck, and SUV

---

[2] All bold quotations hereinafter from auto reviews, unless otherwise indicated, are "emphasis added."

models that **are available** with Android Auto (2016 model year unless otherwise noted)," the review lists "Volvo: XC90."

51.    On July 22, 2016, *eBaymotors* published an article entitled "Volvo XC90 SUV sets a High Mark for 21st Technology." This article states that the 2016 XC90 **"is among a growing list of automobiles that comes standard with...Android Auto."**

52.    On August 18, 2016, *Forbes* published an article entitled "Volvo's XC90 Is A Truly Admirable Technological Feat." This article describes Volvo's 2016 XC90 as offering "top notch infotainment," stating that **"[t]wo of the major players in in-car infotainment, Android Auto and Apple CarPlay, are available on the XC90 as a compliment to Volvo's own near-flawless Sensus Connect".**

53.    On March 17, 2017, *Gotta Be Mobile* published an article entitled "2017 Volvo XC90 Review." This article states that in the 2017 XC90 **"you can use...Android Auto."**

The Non-Compatible Volvo XC90s

54.    On or about December 2016, Volvo added Android Auto to the 2017 XC90s that it was then manufacturing. Volvo also offered complimentary upgrades to create Sensor compatibility with Android Auto. However, **those upgrades were**

23

**only available for 2017 XC90 models that had been built after April 2016. And, those upgrades were not available for any 2016 Volvo XC90s.**

55.     On its website, Volvo now admits that the Sensus system on the 2016 XC90 is not and never will be compatible with Android Auto. Specifically, Volvo says:

> For installation of Android Auto to be possible, the car must be equipped with two USB ports (USB hub). If the car has only one USB port then it is not possible to use Android Auto. **It is not possible to install Android Auto on the XC90 or XC90 Twin Engine model year 2016 since they do not have the USB hub. It is not possible to retrofit the USB hub on these models.**

(Emphasis added).

56.     The 2014 and 2016 Volvo XC90s have only one USB port and hence it is also not possible to install Android Auto on those models and it is not possible to retrofit the USB hub on those models. Hence, those models are and always will be incompatible with Android Auto.

57.     The 2017 Volvo XC90s that Volvo manufactured before April 2016 also have only one USB port and hence it is also not possible to install Android Auto on those 2017 Volvo XC90s, and it is not possible to retrofit the USB hub on those 2017 Volvo XC90s. Hence, those 2017 Volvo XC90s are, and always will be, incompatible with Android Auto.

58.     As previously noted, all of the 2014 and 2016 Volvo XC90s and the 2017 Volvo XC90s manufactured before April 2016 are collectively referred to

herein as the "Non-Compatible Volvo XC90s." Volvo's repeated representations that Non-Compatible Volvo XC90s were or would become compatible with Android Auto were false and misleading.

59.    Based upon sales data publicly reported by Volvo, Plaintiff estimates that approximately 29,000 Non-Compatible Volvo XC90s were sold or leased in the United States.

60.    As a consequence of the above, the Plaintiff and all purchasers and lessees of the Non-Compatible Volvo XC90s (who, as detailed below are the members of the putative Classes) have suffered injury and been damaged by Volvo's misrepresentations and breaches of its express warranties by description. Specifically, Plaintiff and all members of the putative Classes paid for a Volvo XC90 that was represented and warranted by description as being compatible with Android Auto or that Volvo would make it compatible with Android Auto, but the Volvo XC90 they received was not and can never be made compatible with Android Auto.

61.    Plaintiff and all members of the putative Classes received vehicles that were substantially less valuable than the vehicles that Defendants represented and warranted to them, due to the failure of Defendants to deliver a specific, bargained-for characteristic: Android Auto compatibility.

Mr. Middien's Prior Lawsuit

62.     Plaintiff previously filed a class action lawsuit in the United States District Court for the District of Massachusetts asserting the same New Jersey claims he asserts in this case. *See Middien v. Volvo Cars of North America, LLC*, Case No. 1:17-cv-11721-LTS (D. Mass).

63.     Defendants moved to strike Plaintiff's class action allegations in Plaintiff's prior lawsuit on the basis that a district court in Massachusetts would not have personal jurisdiction over the claims of putative class members not residing in Massachusetts—that is, that Plaintiff could not bring a nationwide class in Massachusetts. Defendants indicated that there would be no impediment based on person jurisdiction to asserting claims on behalf of a nationwide class in Defendants' "home" state, New Jersey.

64.     Although Plaintiff did not necessarily agree with Defendants' legal contentions, Plaintiff voluntarily dismissed his complaint in the District of Massachusetts without prejudice and has filed this class action complaint in this Court in order insure that the Court presiding over Plaintiff's case would have personal jurisdiction over Defendants with respect to the claims of all members of the nationwide class of purchasers or leases of the Non-Compatible Volvo XC90s.

## Class Action Allegations

65.    Plaintiff re-alleges and incorporates the allegations contained in the paragraphs above.

66.    Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and a Nationwide Class consisting of:

> All persons who purchased or leased, anywhere in the United States, a new 2014 or 2016 Volvo XC90, and all persons who purchased or leased a new 2017 Volvo XC90, with a Sensus system that is incompatible with Android Auto and cannot be made compatible with Android Auto (the "Nationwide Class" or the "Members of the Nationwide Class").

67.    Plaintiff also brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a Massachusetts Class consisting of:

> All persons who purchased or leased, in Massachusetts, a new 2014 or 2016 Volvo XC90, and all persons who purchased or leased a new 2017 Volvo XC90 in Massachusetts, with a Sensus system that is incompatible with Android Auto and cannot be made compatible with Android Auto (the "Massachusetts Class" or the "Members of the Massachusetts Class").

68.    Plaintiff refers to the Nationwide Class and the Massachusetts Class together as the "Classes."

69.    Plaintiff reserves the right to amend the definition of either Class.

70.    This action is properly maintainable as a class action.

71.     There are approximately 29,000 members of the Nationwide Class and more than a thousand members of the Massachusetts Class. Accordingly, joinder of all members is impractical.

72.     Common questions of law and fact exist as to all members of the Classes and predominate over any questions solely affecting individual members of the Classes. Among questions of law and fact in common to the Classes are:

a.     Whether Volvo misrepresented the features of Non-Compatible Volvo XC90s by representing that such vehicles were or would become compatible with Android Auto;

b.     Whether Non-Compatible Volvo XC90s are, in fact, not compatible with Android Auto;

c.     With respect to the Nationwide Class, whether Volvo, in its marketing and sale of the Non-Compatible Volvo XC90s violated the NJCFA, N.J. S.A. §56:8-2, *et seq*.

d.     With respect to the Massachusetts Class, whether Volvo, in its marketing and sale of the Non-Compatible Volvo XC90s violated the Chapter 93A, Mass. Gen. Laws ch. 93A § 2.

e.     Whether Volvo breached its express warranty by description when it delivered Non-Compatible Volvo XC90s with Sensus systems that lacked the promised compatibility with Android Auto.

73.    Plaintiff's claims are typical of the claims of each member of each of the Classes in that Plaintiff alleges a common course of conduct by Volvo toward each member of the Class. Specifically, Volvo violated the NJCFA and breached its express warranty by description with each member of the National Class, and Volvo violated Chapter 93A and breached its express warranty by description with each member of the Massachusetts Class. Plaintiff and the other members of the Classes seek identical remedies under identical legal theories. There is no antagonism or material factual variation between Plaintiff's claims and those of the Classes.

74.    Plaintiff will fairly and adequately protect the interests of the members of the Classes and has retained counsel who have extensive experience prosecuting class actions and who, with Plaintiff, are fully capable of, and intent upon, vigorously pursuing this action. Plaintiff does not have any interest adverse to the Classes.

75.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Furthermore, the damage that has been suffered by any individual Class member is likely not enough to sustain the expense and burden of individual litigation. Hence it would be impracticable for all members of the Classes to redress the wrongs done to them individually. There will be no difficulty in the management of this action as a class action.

76.    The prosecution of separate actions against Defendants would create a risk of inconsistent or varying adjudications with respect to the individual Class members, which could establish incompatible standards of conduct for Defendants. In addition, adjudications with respect to individual members of the Classes could, as a practical matter, be dispositive of the interests of the other members of the Classes not parties to such adjudications, or could substantially impede or impair their ability to protect their interests.

77.    The members of the Classes are readily identifiable through Defendants' records.

78.    Defendants have acted on grounds generally applicable to the Classes with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Classes as a whole.

## Count I

**Violations of New Jersey's Consumer Fraud Act, N.J.S.A. § 56:8-2, *et seq.***
**(On Behalf of the Nationwide Class)**

79.    Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

80.    Plaintiff brings this claim against Volvo on behalf of himself and the Nationwide Class.

81.    Volvo has engaged in deceptive, unfair, fraudulent and/or misleading commercial practices in the advertising, promotion, marketing, distribution, selling and leasing of Non-Compatible Volvo XC90s.

82.    Volvo represented that Non-Compatible Volvo XC90s had characteristics, uses, benefits, or qualities that they did not have—specifically, that those vehicles were or would be compatible with Android Auto, when, in fact, the vehicles were not compatible with Android Auto and would never be compatible.

83.    In its advertising, promotion, and marketing of the Non-Compatible Volvo XC90s, Volvo misrepresented material facts to Plaintiff and other members of the Nationwide Class with respect to the vehicles' compatibility with Android Auto. As detailed above, Volvo's deceptive advertising, promotion, and marketing of the Non-Compatible Volvo XC90s was created in and emanated from New Jersey.

84.    Volvo's conduct was objectively deceptive and had the capacity to deceive reasonable consumers under the circumstances. The fact that the Non-Compatible Volvo XC90s were not compatible with Android Auto was a material fact to which a reasonable consumer would attach importance at the time of purchase or lease.

85.    Volvo's practices, as detailed herein, violated the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq.

86.     As a direct and proximate result of Defendants' violations of the New Jersey Consumer Fraud Act, Plaintiff and other members of the Nationwide Class have suffered ascertainable losses, which include but are not limited to, the diminished value of their vehicles and the failure to receive the benefit of the bargain promised to them by Defendants (i.e., the vehicles they received were less valuable at the time of purchase or lease than the vehicles Defendants promised to them). Accordingly, Plaintiff and other members of the Nationwide Class were harmed by, and Defendants are liable for, Defendants' actions in violation of the New Jersey Consumer Fraud Act.

87.     Defendants are liable to Plaintiff and the members of the Nationwide Class for treble damages caused by their deceptive conduct, and for reasonable attorneys' fees as set forth in the New Jersey Consumer Fraud Act.

## Count II

### Violations of Chapter 93A, Mass. Gen. Laws ch. 93A, § 2

### (On Behalf of the Massachusetts Class)

88.     Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

89.     Plaintiff brings this claim against Volvo on behalf of himself and the Massachusetts Class.

90.    At all relevant times, the Defendants were engaged in trade or commerce within the Commonwealth of Massachusetts, including the trade or commerce of selling and leasing, or causing to be sold and leased, the Non-Compatible Volvo XC90s at issue within the Commonwealth of Massachusetts.

91.    Volvo has engaged in deceptive, unfair, fraudulent and/or misleading commercial practices in the advertising, promotion, marketing, distribution, selling and leasing of Non-Compatible Volvo XC90s.

92.    Volvo represented that Non-Compatible Volvo XC90s had characteristics, uses, benefits, or qualities that they did not have—specifically, that those vehicles were or would be compatible with Android Auto, when, in fact, the vehicles were not compatible with Android Auto and would never be compatible.

93.    In its advertising, promotion, marketing, distributing, selling and leasing of the Non-Compatible Volvo XC90s, Volvo misrepresented material facts to Plaintiff and other members of the Massachusetts Class with respect to the vehicles' compatibility with Android Auto.

94.    Volvo's conduct was objectively deceptive, and had the capacity to deceive reasonable consumers under the circumstances. The fact that the Non-Compatible Volvo XC90s were not compatible with Android Auto was a material fact to which a reasonable consumer would attach importance at the time of purchase or lease.

95.     Volvo's practices, as detailed herein, constituted unfair or deceptive practices in violation of Chapter 93A, Mass. Gen. Laws ch. 93A § 2.

96.     On December 7, 2017, Plaintiff sent Defendants written demand for relief pursuant to Chapter 93A, Section 9, identifying himself as the claimant on behalf of a putative class of similarly situated Massachusetts purchasers, and reasonably describing the unfair acts or practices relied upon and the injuries suffered by the putative class. Defendants responded to Plaintiff's demand on January 5, 2017. In its response, the Defendant did not make a reasonable offer to resolve this matter because it only offered relief to the Plaintiff and made no offer of relief to the other members of the Massachusetts Class. Furthermore, the offer to the Plaintiff individually was not adequate or reasonable.

97.     As a direct and proximate result of Defendants' violations of Chapter 93A, Plaintiff and other members of the Massachusetts Class have suffered ascertainable losses, which include but are not limited to, the diminished value of their vehicles and the failure to receive the benefit of the bargain promised to them by Defendants (i.e., the vehicles they received were less valuable at the time of purchase or lease than the vehicles Defendants promised to them). Accordingly, Plaintiff and other members of the Massachusetts Class were harmed by, and Defendants are liable for, Defendants' actions in violation of Chapter 93A.

98.     Defendants violations of Chapter 93A, § 2 were willful and knowing.

99.    Defendants are liable to Plaintiff and the members of the Massachusetts Class for treble damages caused by their deceptive conduct, and for reasonable attorneys' fees as set forth in Chapter 93A, § 9.

## Count III

### Breach of Express Warranty by Description in Violation of N.J. Stat. § 12A:2-313(b)

### (On Behalf of the Nationwide Class)

100.    Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

101.    Plaintiff brings this claim against Volvo on behalf of himself and the Nationwide Class pursuant to Section 2-313(b) of the Uniform Commercial Code, adopted under New Jersey law pursuant to N.J. Stat. § 12A:2-313(b). That section provides: "Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to that description."

102.    Volvo described Non-Compatible Volvo XC90s in its advertisements, press releases, specifications provided to dealers, information provided to the press, and through other media, which it knew would be communicated to consumers either directly or indirectly. Volvo's description included that the Non-Compatible Volvo XC90s would be compatible with Android Auto. Volvo's

repeated representations that the Non-Compatible Volvo XC90s would be compatible with Android Auto were express warranties by description under N.J. Stat. § 12A:2-313(b).

103.   Volvo's express warranties by description that the Non-Compatible Volvo XC90s would be compatible with Android Auto were designed to induce Plaintiff and other members of the Nationwide Class to purchase the Non-Compatible Volvo XC90s.

104.   Volvo's express warranties by description became part of the basis of the bargain into which Plaintiff and other members of the Nationwide Class entered when they purchased the Non-Compatible Volvo XC90s.

105.   Given the modern significance of compatibility of vehicles with cell phones, as represented by Volvo's prominent representation of the Non-Compatible Volvo XC90s' compatibility with Android Auto, the natural tendency of Volvo's descriptions of the Non-Compatible Volvo XC90s was to induce the purchase or lease of the Non-Compatible Volvo XC90s.

106.   Volvo breached its express warranties by description with Plaintiff and other members of the Nationwide Class by delivering Non-Compatible Volvo XC90s that were not, and never could be, compatible with Android Auto.

107.   By delivering a vehicle with a Sensus system lacking compatibility with Android Auto, Volvo has breached its express warranty by description to the

purchasers and lessees of the Non-Compatible Volvo XC90s, including the Plaintiff and members of the Nationwide Class.

108.   As a direct and proximate result of Volvo's breach of its express warranties by description with Plaintiff and the members of the Nationwide Class, Plaintiff and the members of the Nationwide Class did not receive the full benefit of their bargain and suffered damage by receiving vehicles that were less valuable than the vehicles that Defendants had represented to them.

109.   Volvo is liable to Plaintiff and the members of the Nationwide Class for all damages caused by Volvo's breach of express warranties by description.


## Count IV

### Breach of Express Warranty by Description in Violation of Mass. Gen. Laws ch. 106 § 2-313(b)

### (on Behalf of the Massachusetts Class)

110.   Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

111.   Plaintiff brings this claim against Volvo on behalf of himself and the Massachusetts Class pursuant to Section 2-313(b) of the Uniform Commercial Code, adopted under Massachusetts law pursuant to Mass. Gen. Laws ch. 106 § 2-313(b). That section provides: "Any description of the goods which is made part of

the basis of the bargain creates an express warranty that the goods shall conform to that description."

112.    Volvo described Non-Compatible Volvo XC90s in its advertisements, press releases, specifications provided to dealers, information provided to the press, and through other media, which it knew would be communicated to consumers either directly or indirectly. Volvo's description included that the Non-Compatible Volvo XC90s would be compatible with Android Auto. Volvo's repeated representations that the Non-Compatible Volvo XC90s would be compatible with Android Auto were express warranties by description under Mass. Gen. Laws ch. 106 § 2-313(b).

113.    Volvo's express warranties by description that the Non-Compatible Volvo XC90s would be compatible with Android Auto were designed to induce Plaintiff and other members of the Massachusetts Class to purchase the Non-Compatible Volvo XC90s.

114.    Volvo's express warranties by description became part of the basis of the bargain into which Plaintiff and other members of the Massachusetts Class entered when they purchased the Non-Compatible Volvo XC90s.

115.    Given the modern significance of compatibility of vehicles with cell phones, as represented by Volvo's prominent representation of the Non-Compatible Volvo XC90s' compatibility with Android Auto, the natural tendency

of Volvo's descriptions of the Non-Compatible Volvo XC90s was to induce the purchase or lease of the Non-Compatible Volvo XC90s.

116.   Volvo breached its express warranties by description with Plaintiff and other members of the Massachusetts Class by delivering Non-Compatible Volvo XC90s that were not, and never could be, compatible with Android Auto.

117.   By delivering a vehicle with a Sensus system lacking compatibility with Android Auto, Volvo has breached its express warranty by description to the purchasers and lessees of the Non-Compatible Volvo XC90s, including the Plaintiff and members of the Massachusetts Class.

118.   As a direct and proximate result of Volvo's breach of its express warranties by description with Plaintiff and the members of the Massachusetts Class, Plaintiff and the members of the Massachusetts Class did not receive the full benefit of their bargain and suffered damage by receiving vehicles that were less valuable than the vehicles that Defendants had represented to them.

119.   Volvo is liable to Plaintiff and the members of the Massachusetts Class for all damages caused by Volvo's breach of express warranties by description.

## Prayers for Relief

WHEREFORE, Plaintiff prays for relief in the form of an order as follows:

a.     Certifying this action as a class action under Federal Rule of Civil Procedure 23, and appointing Plaintiff Middien as class representative and his attorneys as class counsel;

b.     Awarding actual damages to Plaintiff and the Members of the Nationwide Class and the Massachusetts Class;

c.     Awarding attorneys' fees, expenses, and the costs of this suit, together with prejudgment and post-judgment interest at the maximum rate allowed by law; and

d.     Awarding such other and further relief which the Court finds just and proper.

## Jury Demand

Plaintiff demands a trial by jury on all claims so triable.

Dated: March 19, 2018                    Respectfully submitted,

**LOWEY DANNENBERG, P.C.**

By: ___/s/ Sung-Min Lee_____
　　　　Barbara Hart (*pro hac vice forthcoming*)
　　　　David Harrison (*pro hac vice forthcoming*)
　　　　Sung-Min, Lee (*admitted in New Jersey*)
　　　　One North Broadway, Suite 509

White Plains, NY 10601-2301
Telephone:  (914) 997-0500
Facsimile:  (914) 997-0035
E-Mail:     bhart@lowey.com
            dharrison@lowey.com
            slee@lowey.com


**SHAPIRO HABER & URMY LLP**
Edward F. Haber (*pro hac vice forthcoming*)
Patrick J. Vallely (*pro hac vice forthcoming*)
Seaport East
Two Seaport Lane, Floor 6
Boston, MA 02210
(617) 439-3939 – Telephone
(617) 439-0134 – Facsimile
ehaber@shulaw.com
pvallely@shulaw.com